UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                              :
DIANE FERRERI,                                :
                                              :     CASE NO. 1:10-CV-01014
                    Plaintiff,                :
                                              :
vs.                                           :     OPINION & ORDER
                                              :     [Resolving Doc. Nos. 20, 21, 22, 23, 24]
CITY OF STRONGSVILLE, *et al.*,               :
                                              :
                    Defendants.               :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this civil rights action, the Defendants move for summary judgment.  [Doc. 20.]  The motion is opposed.  [Doc. 31.]  The Defendants replied.  [Doc. 32.]  The Plaintiff also files a cross-motion for partial summary judgment.  [Doc. 21.]  The motion is opposed.  [Doc. 30.]  The Defendants replied.  [Doc. 33.]  The Plaintiff also moves to strike several exhibits from the summary judgment record.  [Doc. 22; Doc. 23; Doc. 24.]  The motions to strike are opposed.  [Doc. 26; Doc. 27; Doc. 28.]

## I. Background

Plaintiff Diane Ferreri brings this action against the City of Strongsville and Strongsville Police Officers Mike Guminey and Ron Stolz.  [Doc. 4.]  This lawsuit stems from the seizure of Plaintiff Ferreri by Officers Guminey and Stolz on May 5, 2009.  [*Id.*]  Officers Guminey and Stolz seized the Plaintiff under an order of involuntary detention for an emergency hospitalization; the

Case No. 1:10-CV-01014
Gwin, J.

Plaintiff claims that the manner by which the officers seized her violated her Fourth Amendment rights. [*Id.*] Specifically, Ferreri asserts the following causes of action: (1) a claim under 42 U.S.C. § 1983 for excessive force against Officers Guminey and Stolz in their individual capacity; and (2) a claim under 42 U.S.C. § 1983 against the City of Strongsville for failure to train. On May 5, 2010, Plaintiff Ferreri filed suit in the Northern District of Ohio. [Doc. 1.] The Court enjoys subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

This action arises from the involuntary detention of Plaintiff Diane Ferreri under Ohio Revised Code § 5122.10. This statue provides a mechanism for the involuntary detention of persons believed to represent a substantial risk of physical harm to him/herself or to others "if allowed to remain at liberty pending examination." O.R.C. § 5122.10.

Plaintiff Ferreri has been a patient of Dr. Robert Weiss, a psychiatrist at MetroHealth Hospital, since 1999. [Doc. 20 at 2; Doc. 21 at 2.] Ferreri was diagnosed with Attention Deficit Disorder by Dr. Weiss and was taking medication for that condition at the time of the events in the current suit. [Doc. 21 at 2.] On March 30, 2009, Plaintiff Ferreri visited Dr. Weiss at his office for an appointment. [Doc. 20 at 2; Doc. 21 at 2.] Soon after that appointment, Ferreri received notification from Dr. Weiss that he scheduled her for another appointment on April 30, 2009 because he wished to see her again. [Doc. 20 at 2; Doc. 20-3 at 7-8.] Plaintiff Ferreri did not attend this appointment and instead left a message with Dr. Weiss's office cancelling it. [Doc. 20-3 at 7-8.] Ferreri used a cell phone to call Dr. Weiss since her land-line had been disconnected a few weeks earlier and Ferreri did not confirm that Dr. Weiss received her message. [Doc. 20-3 at 10, 18-19.]

On April 30, 2009, two women from Social Services came to Ferreri's home to check on her at Dr. Weiss's behest. [Doc. 20 at 2; Doc. 20-3 at 10-13.] The two women identified themselves

-2-

Case No. 1:10-CV-01014
Gwin, J.

as Social Services workers and told Ferreri that they were there because Dr. Weiss was worried about her since she did not come to her April 30th appointment.  [Doc. 20 at 2; Doc. 20-3 at 11-13.] Ferreri told the women that she did not have an appointment with Dr. Weiss, told the women they could not come inside her home, and asked them to leave.  [Doc. 20 at 3; Doc. 20-3 at 11-13.]

Unbeknownst to Ferreri, Dr. Weiss had been unsuccessfully attempting to reach her throughout the first few days of May.  [Doc. 20-3 at 20.]  However, because Ferreri's phone line was disconnected, Dr. Weiss was unable to contact her.  [Id.]  Due to Ferreri's lack of contact, on May 5, 2009, Dr. Weiss completed an order of involuntary commitment (or a "pink slip") for an emergency hospitalization for a mental health evaluation.[1/]  [Doc. 20 at 3.]  According to Officers Guminey and Stolz, the pink slip indicated that Dr. Weiss believed that Ferreri was mentally ill and that she represented a substantial risk of physical harm to herself or to others.  [Doc. 20 at 3; Doc. 20-1 at ¶ 5.]  The officers also remember the form stating that  Ferreri's family attempted to contact

---

[1/] Under Ohio law, if a  person is suspected of being a mentally ill, O.R.C. Chapter 5122 provides two different procedures which may be used to accomplish an involuntary commitment of that person. The first procedure, which occurred in the current suit, is an emergency hospitalization procedure conducted pursuant to the guidelines found in O.R.C. 5122.10.  *In re Miller*, 585 N.E.2d 396 (Ohio 1992).  Under O.R.C. Section 5122.10, a "'police officer may take a person into custody, and may immediately transport him to a hospital, if the police officer has reason to believe that the person is a mentally ill person subject to hospitalization by court order under division (B) of section 5122.01 of the Revised Code, and represents a substantial risk of physical harm to himself or others if allowed to remain at liberty pending examination.' R.C. 5122.10 requires that 'a written statement shall be given to such hospital by the police officer stating the circumstances under which such person was taken into custody and the reasons for the police officer's belief.'"  *Id.* at 400 (quoting O.R.C. § 5122.10).  The written statement serves as an affidavit to ensure that probable cause exists that the seizure is necessary.  *Id.* at 400.

"After a person alleged to be mentally ill and subject to court-ordered hospitalization is transported involuntarily to a hospital, R.C. 5122.10 requires that the person be examined within twenty-four hours by the hospital staff.  Following the examination, the chief clinical officer of the hospital has two options:  if he or she believes the person is not mentally ill subject to hospitalization by court order the person must be released (unless a court has already issued a temporary detention order); or if the chief clinical officer believes the person is mentally ill subject to hospitalization by court order he or she may detain the person for up to three court days following the date of the examination.  If the latter course of action is followed, and if the person has not in the meantime accepted voluntary commitment, the chief clinical officer must then by the end of the third day either file an affidavit under R.C. 5122.11, thereby initiating court commitment proceedings, or discharge the patient."  *Id.* at 400-01 (citing O.R.C. §§ 5122.10, 5122.11).

Case No. 1:10-CV-01014
Gwin, J.

her, but had been unable to do so and were worried about her safety.[2][3] [Doc. 20-1 at ¶ 5.] Later

that same day – May 5, 2009 – Officers Guminey and Stolz were dispatched to Ferreri's home to

execute the pink slip.  [Doc. 20 at 3.]

The officers arrived at Ferreri's home in Strongsville, Ohio at about 6:40 P.M. and parked

their patrol cars in front of her home.  [Doc. 20 at 3-4; Doc. 21 at 2-3.]  Another officer, as well as

a fire department vehicle also were present at the scene, although it is unclear when these vehicles

arrived.  [Doc. 21-3 at 14.]  The officers approached Ferreri's home and knocked on the front door

several times, but received no answer.  [Doc. 20 at 4; Doc. 20-1 at ¶ 6.]  Plaintiff Ferreri was in her

---

[2] The Plaintiff files a motion to strike (Motion to Strike No. 1), seeking an order striking a reference to the contents of the pink slip from the summary judgment record.  [Doc. 22.]  The Plaintiff says that this evidence may not be considered by the Court under Federal Rule of Evidence 1002.  [Id.]  The Defendants contend that this evidence is admissible under Rule 1004(1) or (3), since the original of the pink slip has either been destroyed or remains under the Plaintiff's control.  [Doc. 26.]

Under Federal Rule of Civil Procedure 56(c)(4) "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see also Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 613 n. 3 (6th Cir. 2007).

Under Evidence Rule 1002, testimony about the contents of a document are generally not admissible.  Fed. R. Evid. 1002.  However, there a number of exceptions to this rule, which are set forth within Rule 1004.  Under that Rule, testimony about the contents of the pink slip would be admissible at trial if the original pink slip cannot be located.  Fed. R. Evid. 1004(1)-(3); *In re Sol Bergman Estate Jewelers, Inc.*, 2000 WL 263338, at *4 (6th Cir., Feb. 29, 2000).  Since pink slip itself is missing from the Plaintiff's medical records and is likely destroyed, the Court finds that testimony about the pink slip would likely be admissible at trial.  Id.  Therefore, the Court will consider that testimony as part of the summary judgment record and denies the Plaintiffs Motion to Strike No. 1.

[3] The Plaintiff also files motion to strike the third sentence of paragraph five of the affidavit of Officer Guminey, which reads that "[the pink slip] indicated that Dr. Weiss has reason to believe that Ferreri was mentally ill and represented a substantial risk of physical harm to herself or others."  [Doc. 20-1 at ¶ 5; Doc. 24.]  The Plaintiff says that this testimony is inconsistent with Guminey's earlier testimony at his deposition and should, therefore, be stricken from the record.  [Id.]  The Defendants oppose the motion, saying that the testimony is consistent.  [Doc. 28.]

The Court denies this motion.  The affidavit submitted in support of the Defendants' motion for summary judgment and Guminey's deposition testimony are not inconsistent.  In his deposition, Guminey states that he remembers that the form was signed by Dr. Weiss, that one of the boxes on the form was checked, and that the form said Ferreri's family was not able to contact her.  [Doc. 24-1.]  Every box on the pink slip contains language that would lead an officer to believe that the person to be taken into custody was mentally ill and was dangerous to herself or others.  [Doc. 28-1.]  All of the contents of the disputed sentence in the affidavit were also stated during the deposition (albeit in slightly less exact and precise form).  Thus, the Plaintiff's argument that the affidavit and deposition are inconsistent with each other is without merit and the Court denies Motion to Strike No. 3.

-4-

Case No. 1:10-CV-01014
Gwin, J.

kitchen – at the rear of the home – and heard the knocking.  [Doc. 20-3 at 23.]  Ferreri, however,

ignored the knocking because she was busy preparing dinner and did not answer the door.  [*Id.*]

Having received no response, the officers walked to the rear of Ferreri's house and knocked at the

back door.  [*Id.*]  The officers again received no response.  [Doc. 20-1 at 2; Doc. 21-2 at 7.]  The

officers attempted to open the back door and found that the door easily opened because the locking

mechanism was not functioning properly.  [Doc. 20-1 at ¶ 6; Doc. 20-3 at 25-25.]  The officers

entered the home, immediately saw Plaintiff Ferreri in the kitchen, and announced themselves as

Strongsville police officers.  [Doc. 20-1 at ¶ 6; Doc. 20-3 at 30.]  The officers testified that Ferreri

seemed calm when they entered the house and did not appear to be mentally ill or otherwise

dangerous.  [Doc. 21-2 at 8-9; Doc. 21-3 at 11-12.]

After the officers entered her home, Ferreri says that she asked them if they had an arrest

warrant and demanded that they leave her house since they did not.  [Doc. 20-3 at 31.]  The officers

told Ferreri that their actions were authorized under a pink slip signed by Dr. Weiss and that they

were going to take her to MetroHealth for treatment and observation.  [Doc. 20-3 at 33; Doc. 21-2

at 8.]  The officers briefly showed the pink slip to Ferreri, although it is not clear if Ferreri ever had

an opportunity to read the form or exactly when they showed the slip to her.  [Doc. 20-3 at 33; Doc.

21-2 at 8.]  Ferreri refused to leave her home and told the officers that she was not leaving because

she was not mentally ill.  [Doc. 20-3 at 33; Doc. 21-2 at 9; Doc. 21-3 at 16.]

At this point, the factual circumstances become less clear.  Ferreri says that the officers

continued to insist that she leave her home and come with them to MetroHealth.  [Doc. 20-3 at 34.]

Ferreri says that she was sitting on a stool next to her counter and was gripping the lip of the counter

to prevent the officers from forcing her to leave.  [*Id.* at 34, 35-36.]  Officer Stolz approached Ferreri

-5-

Case No. 1:10-CV-01014
Gwin, J.

and briefly showed her the pink slip, which she was unable to read.  One of the officers then pried

her from the counter, very roughly handcuffed her, and began to bodily drag her out of the house.

[*Id.* at 34-35, 40-41.]  She claims that the officers dragged her out of the back door, during which

time she screamed that the officers were hurting her.  [*Id.* at 35.]  The terrain in her backyard is

uneven and Ferreri alleges that while Officers Guminey and Stolz were dragging her from the home

that she lost footing on the ground and felt a popping in her knee.  [*Id.* at 35, 45.]  Ferreri says that

she immediately felt great pain in her knee, screamed, and repeatedly begged the officers to stop

pulling her towards their patrol cars because she was in such great pain.  [*Id.*]  The officers ignored

her pleas and instead threw her in the back of the police cruiser.  [*Id.* at 35-36.]  Ferreri says that she

did not physically resist the officers because they were too strong, but that Guminey and Stolz were

abusive and overly rough with her anyhow.  [*Id.* at 46.]  Plaintiff Ferreri now says that the conduct

of Officers Guminey and Stolz caused her to injure her knee, which later required surgery and other

treatment.[4/] [5/]

The officers present a different version of the events surrounding the seizure of Plaintiff

Ferreri.  The officers say that after Ferreri initially refused to accompany them to MetroHealth that

they spent another approximately twenty minutes verbally attempting to persuade her to leave.  [Doc.

21-2 at 9.]  However, throughout the entire twenty minutes Ferreri insisted that she was not leaving

---

[4/] The Plaintiff also files a motion to strike (Motion to Strike No. 2), which requests that the Court strike from
the summary judgment record the Plaintiff's medical records.  [Doc. 23.]  The Plaintiff says that this information is not
relevant to any issue in the summary judgment motion.  [*Id.*]  The Defendants argue that information regarding the
Plaintiff's medical condition is relevant in determining if the Plaintiff was dangerous to herself or to others and whether
the Plaintiff suffered a knee injury during the altercation at her home.  [Doc. 27.]  The Court finds the Defendants'
argument persuasive on this point and finds that this evidence is relevant in this suit.  Thus, the Court declines to strike
the medical records from the summary judgment record and denies the Plaintiff's Motion to Strike No. 2.

[5/] For purposes of considering Defendants motions, the Court accepts Plaintiff Ferreri's version as true.  But
for purposes of considering Plaintiff Ferreri's motion for summary judgment, the Court accepts Defendants' version.

Case No. 1:10-CV-01014
Gwin, J.

because she was not in need of treatment.  [*Id.*]  At some point Ferreri became upset and threw herself onto the floor of her kitchen and "began flailing her arms and kicking her legs around." [Doc. 21-2 at 10.]  Due to her reaction, the officers felt as though they needed to handcuff Ferreri; to do so, they pulled her up by her arms and one of them handcuffed her arms behind her back to keep her from hurting herself or either of the officers.  [Doc. 20-1 at ¶ 9; Doc. 21-2 at 10.]  The officers say they quickly moved Ferreri through the backdoor of her house out to the police cruiser to prevent Ferreri from physically resisting them further.  [Doc. 20-1 at ¶ 10.]  The officers do not mention Ferreri's knee being injured and deny using excessive force.  [Doc. 20-1 at  ¶ 10.]

At this point, the stories again become more similar.  The officers placed Ferreri in one of the waiting patrol cars, where she remained handcuffed in the backseat.  [Doc. 20-1 at ¶ 11; Doc. 20-3 at 52-54.]  The officers drove her to the Strongsville Police Station, where a female jailer was picked up, and then they drove directly to MetroHealth.  [Doc. 20-1 at ¶ 11; Doc. 20-3 at 54-55.] Ferreri was held as a patient at MetroHealth for observation for about three days.  [Doc. 20-3 at 61.]

On November 22, 2010, the Defendants filed a motion for summary judgment.  [Doc. 20.] The Defendants say that they are entitled to summary judgment on the grounds that:  (1) all claims brought under 42 U.S.C. § 1983 against Officers Guminey and Stolz much be dismissed since both officers are entitled to qualified immunity; and (2) the Plaintiff's *Monell* claim against the City of Strongsville must be dismissed because the Plaintiff failed to produce any evidence that City policy or procedure caused the alleged constitutional violations.  On November 22, 2010, the Plaintiff filed a cross-motion for partial summary judgment, requesting summary judgment on a number of affirmative defenses forwarded by the Defendants in their answer to the amended complaint.  [Doc. 21.]

Case No. 1:10-CV-01014
Gwin, J.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (internal quotation omitted).

Case No. 1:10-CV-01014
Gwin, J.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party.  *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Martingale*, 361 F.3d at 301.

### III. Analysis

*III.A    Qualified Immunity*

The Plaintiff pleads a cause of action under 42 U.S.C. § 1983, asserting violations of her Fourth Amendment rights. "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In determining whether a defendant is entitled to qualified immunity, the Court must employ a two-part analysis.  The Court must determine (1) whether, taken in the light most favorable to the plaintiff, whether the facts alleged constitute a violation of a constitutional right and (2) whether the

Case No. 1:10-CV-01014
Gwin, J.

constitutional right at issue was clearly established at the time of the defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).[6/] Courts have discretion, based on the circumstances of the case, to decide which of the two inquiries should be addressed first. *Pearson*, 129 S. Ct. at 818 (2009).

### i. Constitutional Violation

The Plaintiff says that Officers Stolz and Guminey were not justified in the amount of force that was used in seizing her and that, as a result, her Fourth Amendment rights were violated. [Doc. 4.] Specifically, the Plaintiff says that the officers did not possess probable cause for their seizure and that the officers also used excessive force in removing her from her home. [Doc. 21 at 5-6.] The Defendants argue that Officers Stolz and Guminey's actions were reasonable, saying that the officer's use of force was justified under the circumstances because the Plaintiff resisted them. [Doc. 20 at 6-10.]

All claims that law enforcement officers have used excessive force – deadly or not . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). While most commonly analyzed in criminal settings, the Fourth Amendment also "applies in the civil setting to seizures of individuals for psychiatric evaluations or involuntary confinement." *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008) (citing *Monday v. Oullette*, 118 F.3d 1099,

---

[6/] When analyzing claims of qualified immunity, courts in the Sixth Circuit also sometimes use a three-step analysis. Under the tripartite approach, a court must also analyze whether "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). However, since this step was not noted by the Supreme Court in *Saucier* and *Pearson*, this inquiry is no longer mandatory. *Carter*, 408 F.3d at 311. Rather, the Sixth Circuit Court of Appeals has explained that step three is now merely a useful tool in certain cases in increasing the "clarity of the proper analysis." *Id.* In cases of alleged excessive force, the third step is wholly superfluous since a requirement of a violation is a finding of objectively unreasonable force. *Bina v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). Accordingly, the Court will not separately analyze this third step of the analysis.

Case No. 1:10-CV-01014
Gwin, J.

1102-04 (6th Cir. 1997). Indeed, "the Fourth Amendment reasonableness standard generally applies any time a government official seizes a free citizen with the purpose of potentially creating an involuntary custodial relationship with the State." *Lanman*, 529 F.3d at 680.

In assessing Fourth Amendment unreasonable force claims, Courts apply the "objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The inquiry is conducted objectively, based on the information actually possessed by the officer at the time he or she acted. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In determining here whether the amount of force used by Officers Stolz and Guminey was reasonable, the Court must also consider whether the officers seizure of Plaintiff Ferreri was justified. "Absent suspected criminal activity, a law enforcement official may not physically restrain an individual merely to assess his mental health . . . [r]ather . . . an officer must have probable cause to believe that the person seized poses a danger to himself or others." *Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008). Thus, a determination of whether the amount of force used to restrain the Plaintiff was reasonable is necessarily informed by whether the officers possessed probable cause to restrain the Plaintiff at all.

"The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Monday*, 118 F.3d at 1102; *Fisher v. Harden*, 398 F.3d 837, 843 (6th Cir. 2005) ("officers detaining

Case No. 1:10-CV-01014
Gwin, J.

an individual believed to be suicidal must have probable cause to believe that the person is dangerous to himself or others."). However, "[a] showing of probable cause in the mental health seizure context does not require an actual showing of dangerous behavior." *Aukerman*, 512 F.3d at 783. Rather, the officer must only possess sufficient information to allow a reasonable officer to conclude that the individual is a danger to himself or to others. *Id.* Courts evaluate the existence of probable cause from the "perspective of a reasonable and objective person in the position of seizing official. *Id.*

Here, it is not clear that the officers possessed probable cause to seize the Plaintiff. The officers testify that when they placed the Plaintiff in custody that the main piece of information upon which they relied was the pink slip, the contents of which the officers admit they only vaguely remember. [Doc. 21-2 at 6-8; Doc. 21-3 at 9-12.] A determination of whether the officers possessed probable cause to place the Plaintiff in custody will depend upon the contents of the slip. Further, prior to placing Ferreri under arrest, the officers say that they spent about twenty minutes speaking with her and also say that they noticed no other evidence indicating that Ferreri was a threat to herself or to others. [Doc. 21-3 at 9-12.] Undoubtedly, police officers executing pink slips should be able to rely upon the information contained in them when taking a person into custody. In this regard, the pink slip acts as a type of warrant. However, pink slips are not approved by a neutral magistrate and they do not meet the other requirements required for a validly executed arrest warrant. *United States v. Parker*, 373 F.3d 770, 771 (6th Cir. 2004) (stating that a warrant must be issued by a neutral and detached magistrate). Thus, unlike a facially valid arrest warrant – which would likely entitle the officers to qualified immunity – the officers here, as a matter of law, were required to also rely upon their own observations of the Plaintiff's mental condition before seizing her. *Compare*

-12-

Case No. 1:10-CV-01014
Gwin, J.

*Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580, 585 (6th Cir. 2005) (finding that officers are entitled to qualified immunity when they relied upon a facially valid arrest warrant in making an arrest) *with Fisher*, 398 F.3d at 843 (officers lacked probable cause to believe that an elderly man, who had been hunting while sitting on railroad tracks, was suicidal or a danger when he had obeyed their commands to drop his rifle and had approached them in a normal manner, even though the officers had received a reported suicide attempt); *see also Monday*, 118 F.3d at 1101 (officer had probable cause to seize after responding to a call by the plaintiff threatening suicide and finding that plaintiff was mixing alcohol and a large quantity of Xanax pills); *Simon v. Cook*, 261 F. App'x 873, 879 (6th Cir. 2008) (finding probable cause to seize after officers spoke with plaintiff for a long period of time and witnesses plaintiff acting bizarrely and threatening); *Aukerman*, 512 F.3d at 783 (finding probable cause when officers knew that plaintiff was previously hospitalized for a suicide attempt, had received notice that the plaintiff threatened suicide, and witnessed plaintiff acting consistent with those reports).  Thus, as this case law makes clear, the officers were required to make an independent finding based on their own observations – beyond the pink slip – before executing an order of involuntary detention for mental health reasons.

Taken in a light most favorable to the Plaintiff, a reasonable jury could find that the officers did not have probable cause to believe that the Plaintiff was dangerous and that, therefore, the Plaintiff's Fourth Amendment rights were violated by the force that was used to restrain her. *Crockett v. Cumberland College*, 316 F.3d 571, 581 (6th Cir. 2003) ("In the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible.").

Further, even assuming that the officers possessed probable cause to believe that the Plaintiff

-13-

Case No. 1:10-CV-01014
Gwin, J.

was dangerous to herself or to others (which would permit them to use reasonable force to effectuate a seizure), a reasonable jury could find that the force used here was excessive. Most of the facts surrounding the actual use of force are currently disputed and the reasonableness of that force will depend upon jury resolution of those facts. However, taking all of the many disputed facts in favor of the Plaintiff, the police officers very roughly handcuffed and dragged a small woman, who was not resisting in any way, out of her house and through her backyard. During this time, the Plaintiff alleges she repeatedly begged the officers to stop because they had injured her knee. But, rather than stopping, the officers continued dragging her and placed her in their patrol car. If the Plaintiff's version of the seizure is proven true, a reasonable jury could find that this use of force was excessive and that the Plaintiff's Fourth Amendment rights were thereby violated. *See Miller v. Sanilac County*, 606 F.3d 240, 252-53 (6th Cir. 2010) (denying qualified immunity where police officer slammed plaintiff into car and kicked his legs apart when there was factual dispute whether the plaintiff was resisting officer); *Carpenter v. Bowling*, 276 F. App'x 423, 426-28 (6th Cir. 2008) (genuine issue of material fact where suspect thrown against van despite not resisting arrest); *Lustig v. Mondeau*, 211 F. App'x 364, 369-71 (6th Cir.2006) (affirming denial of summary judgment where officer twisted arm of woman accused of driving a watercraft while intoxicated despite not resisting); *Solomon v. Auburn Hills Police Dep't.*, 389 F.3d 167, 174 (6th Cir. 2004) (affirming denial of qualified immunity where woman arrested for trespassing in movie theater was kicked in legs and thrown against display case despite minor offense, posing no immediate threat, and not attempting to flee).

Because there are a number of unresolved issues of material fact that will determine whether the officers use of force was reasonable, the Court finds that the Plaintiff's claim of excessive force

Case No. 1:10-CV-01014
Gwin, J.

survives the first prong of the qualified immunity analysis.

    ii.  Clearly Established Right

Because the Plaintiff establishes that a reasonable jury could find Officer Stolz's and Guminey's use of force objectively unreasonable, the Court must now determine if such a finding would indicate that the officers violated a clearly established constitutional right. *Pearson*, 129 S. Ct. at 818.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  "In determining whether a reasonable officer would have known that his conduct was unlawful, [a] [c]ourt looks first to the precedents of the Supreme Court, then to case law from this circuit, and finally to decisions from other circuits." *Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir. 2007).

Applying this test, the Court concludes that Plaintiff Ferreri had a clearly established right to not be seized for mental health reasons and thereby subjected to force unless the officers had probable cause to believe that the Plaintiff was dangerous to herself or to others.  *See Fisher*, 398 F.3d at 843 (concluding this right is clearly established for purposes of qualified immunity).  The Sixth Circuit has previously held that this right is clearly established and it is not necessary for the Court to consider this prong of the qualified immunity analysis any further.

Since the Plaintiff presents a conflicting version of facts that, if proven true, would establish a violation of a clearly established constitutional right, the Court concludes that Officers Stolz and Guminey are not entitled to summary judgment on the issue of qualified immunity.

*III.B Municipal Liability*

The Plaintiff also claims that the City of Strongsville failed to adequately train its officers

-15-

Case No. 1:10-CV-01014
Gwin, J.

on how to appropriately execute an order of involuntary detention issued under Ohio Revised Code

Section 5122.10.  [Doc. 4.]  The Plaintiff says that this failure caused the violation of her rights

under the Fourth Amendment to the Constitution – specifically, that she was seized without probable

cause and that she was subjected to excessive police force.  [*Id.*]

To succeed on a claim for relief under § 1983 against a municipality, a plaintiff must prove

that the violation of a federal right occurred as the result of an illegal policy or custom.  *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A municipality may not be held liable under § 1983

simply upon the theory of respondeat superior.  *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th

Cir. 2005).  A governmental policy or custom, or a policy of inaction, must have been the moving

force directly causing the alleged violation.  *Bd. of County Comm'rs of Bryan County v. Brown*, 520

U.S. 397, 403-04 (1997).  In making a failure to train claim, the plaintiff must specifically prove that:

(1) the training program was inadequate for the tasks that officers must perform; (2) the inadequacy

was the result of deliberate indifference; and (3) the inadequacy was closely related to or actually

caused the injury.  *Ciminillo*, 434 F.3d 461, 469 (6th Cir. 2006).

Here, the Plaintiff says that the Officers Stolz and Guminey were inadequately trained in the

proper procedures for executing a pink slip.  Specifically, Plaintiff argues that the City of

Strongsville failed to trained the officers on when the officers should contact a supervisor who would

be able to summon the Cuyahoga County crisis team, which is specifically trained to assist in heated

civil confinement situations.  [Doc. 31 at 2-3.]  The Plaintiff further claims that the lack of training

caused the alleged constitutional violations, that this result was foreseeable, and that the lack of

training constituted deliberate indifference on the part of the City of Strongsville.  [*Id.*]  The

Defendants argue that the Plaintiff fails to proffer sufficient evidence to create genuine issues of

Case No. 1:10-CV-01014
Gwin, J.

material fact regarding any of the elements of a claim for failure to train under § 1983. [Doc. 20 at

10-12.]

The first element of a claim for failure to train is that the existing training program was

inadequate for the tasks that the officers must perform. *Ciminillo*, 434 F.3d at 469. Here, the

Plaintiff proffers the deposition testimony of Officers Stolz and Guminey, who both testify that they

received no training from the Strongsville Police Department on how to properly execute a pink slip.

[Doc. 31-2 at 2-3; Doc. 31-4 at 2-5.] The Plaintiff also proffers the testimony of Strongsville Deputy

Police Chief James Kobak, who testified that he was unfamiliar with a training program (Crisis

Intervention Team training). [Doc. 31-3 at 6.] This training program is used by a number of law

enforcement agencies in Ohio, including the Ohio Highway Patrol and the Cuyahoga Count Sheriff's

Department, and it focuses on the interaction between law enforcement needs and mental health

issues. [*Id.*; Doc. 30-1 at ¶ 5.] The Defendants rebut this argument by pointing out that Officers

Stolz and Guminey received training on pink slips at the policy academy. [Doc. 32 at 3.] Based on

the testimony of Stolz, Guminey, and Kobak, the Plaintiff demonstrates that there is a disputed issue

of material fact regarding the adequacy of the Strongsville Police Department's existing training

programs.

Since there is an issue of material fact on the first element, the Court shall proceed to the

second element of the failure to train claim. To establish the second element, a plaintiff must prove

that the inadequate training was the result of deliberate indifference. *Ciminillo*, 434 F.3d at 469.

There are two situations justifying a conclusion of deliberate indifference. The first is a failure to

provide adequate training in light of foreseeable consequences and the second is where the city or

municipality fails to act in response to repeated complaints of constitutional violations. *Brown v.*

-17-

Case No. 1:10-CV-01014
Gwin, J.

*Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).  Here, the Plaintiff makes no allegation of repeated complaints and instead relies upon the claim that it was foreseeable that not training officers on when to summon the specialized crisis team would result in the use of excessive force.  [Doc. 31 at 3-4.]

To prove deliberate indifference under this approach, a plaintiff must show that there was an "obvious" potential for a constitutional violation.  *Plinton v. County of Summit*, 540 F.3d 459, 464-65 (6th Cir. 2008).  Aside from pointing to the statements of Officers Stoltz, Guminey, and Kobak that the City of Stronsgville had no formal training program in place, the Plaintiffs proffer no evidence supporting their claim of deliberate indifference.  In light of the heavy showing required to prove deliberate indifference, the Plaintiff fails to create a genuine issue of material fact on the second element of the failure to train claim.  *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (stating that deliberate indifference would be found where, for example, police officers with firearms were given no training on use of deadly force).  Based upon the standard set forth by the Supreme Court in *City of Canton*, it is clear that any alleged violation here would not rise to the level of deliberate indifference.

The final element of a failure to train claim is that the inadequacy was closely related to or actually caused the injury.  *Ciminillo*, 434 F.3d at 469.  The Plaintiff says that if Officers Stolz and Guminey were adequately trained that they would not have physically removed her from her home and instead would have utilized the Cuyahoga County crisis intervention team.  The Court finds that this allegation is sufficient to create a triable issue of material fact on the issue of causation, particularly since many of the factual circumstances surrounding the police officers actual use of force are unresolved.

However, since the Plaintiff fails to create a genuine issue of material fact regarding the

-18-

Case No. 1:10-CV-01014
Gwin, J.

second element of their § 1983 claim for failure to train, the Court finds that the City of Strongsville

is entitled to summary judgment on this cause of action.

*III.C Defenses*

The Plaintiff files a cross-motion for partial summary judgment on a number of the

affirmative defenses asserted by the Defendant in their answer to the Plaintiff's amended complaint.

[Doc. 4; Doc. 10; Doc. 21.]  As a preliminary matter, the Court rejects the Defendants' argument that

it is not permissible for the Plaintiff to move for summary judgment on affirmative defenses.  [Doc.

30.]  It is accepted law that a party may move for summary judgment on claims, as well as defenses.

*See Celotex Corp.,* 477 U.S. at 327; *Wimbush v. Wyeth*, 619 F.3d 632, 638 (6th Cir. 2010).  Thus,

the Court may properly consider this motion and proceeds to the merits. The affirmative defenses

upon which the Plaintiff moves can be grouped into two general categories – first, those that are

defenses on the merits of the case, and second, those that assert state law-based immunity.  The

Court will consider each group in turn.[7/]

On the first group of affirmative defenses, the Plaintiff moves for summary judgment on

three defenses.  In Affirmative Defenses No. 4, the Defendants claim that "[a]ny acts performed [

] were done in good faith and based upon probable cause."  [Doc. 21.]  In Affirmative Defense No.

5, the Defendants assert that any "acts performed [ ] were privileged."  [*Id.*]  In Affirmative Defense

No. 8, the Defendants say that the officers "acted pursuant to lawful and/or judicial process."  [*Id.*]

Although each of these defenses presents its own set of specific legal issues, the current motion

---

[7/] In the lone outlier, the Plaintiff also moves for summary judgment on the Defendant's Affirmative Defense No. 6, which asserts that the "Defendants are entitled to absolute and/or qualified immunity." [Doc. 21.] As was already resolved in this opinion, the Defendant officers are not entitled to qualified immunity, and since the officers were not involved in judicial, prosecutorial, or legislative functions, none are entitled to absolute immunity. *See generally Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus, the Court grants the Plaintiff's motion to dismiss Affirmative Defense No. 6.

Case No. 1:10-CV-01014
Gwin, J.

summary judgment is resolved as to each by the Court's earlier determination that there are a number of unresolved factual issues related to the seizure of the Plaintiff and the force used to effectuate that seizure.  Thus, the Court denies the Plaintiff's motion to dismiss all of these defenses since each depends upon unresolved issues of material fact.

In the second group, the Plaintiff moves for summary judgment on three affirmative defenses. Each of these defenses presents a defense based on Ohio state immunity law.  In Affirmative Defense No. 9, the Defendants claim immunity under the "Ohio Revised Code and/or common law of Ohio." [Doc. 21.]  In Affirmative Defense No. 10, the Defendants assert immunity "pursuant to Ohio Revised Code § 5122.3." [*Id.*]  Finally, in Affirmative Defense No. 11, the Defendants assert immunity under "Chapter 2744 of the Ohio Revised Code." [*Id.*]  Applying Ohio state affirmative defenses to bar liability for federal constitutional violations would be a clear violation of the Supremacy Clause and is not constitutionally permissible. *See Haywood v. Drown*, 129 S.Ct. 2108, 2115 n.5 (2009) (reaffirming holding in *Howlett v. Rose* that a state may not extend immunity over § 1983 beyond that already provided under federal law); *Howlett v. Rose*, 496 U.S. 356, 375-76 (1990) (state may not provide state immunity for federal § 1983 claims since the defenses to federal causes of action are defined by federal, not state law).  Thus, the Court grants the Plaintiff's motion on these affirmative defenses and dismisses them as without merit.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment.  The Court **GRANTS** the motion with respect to the City of Strongsville and dismisses all claims against Strongsville.  Because there are issues of material fact regarding the conduct of Officers Stolz and Guminey, the Court **DENIES** the motion for summary judgment as to the officers.  The Court **GRANTS IN PART** and **DENIES IN PART**

Case No. 1:10-CV-01014
Gwin, J.

the Plaintiff's partial motion for summary judgment.  The Court **GRANTS** the motion with respect

to Affirmative Defenses Numbers 6, 9, 10, and 11; the Court **DENIES** the motion with respect to

Affirmative Defenses Numbers 4, 5, and 8.  The Court **DENIES** the Plaintiff's Motions to Strike

Numbers 1, 2, and 3.

     IT IS SO ORDERED.

Dated: January 13, 2011            *s/     James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE